308 A.2d 511.

ELEANOR T. BLACK *vs.* ALBERT F. WIESNER, JR., *Executor u/w of* ALBERT F. WIESNER.

AUGUST 17, 1973.

PRESENT: Roberts, C. J., Paolino. Kelleher and Doris, JJ.

PAOLINO, J. This is a civil action to determine the owner-ship of certain shares of stock. The case was heard before a justice of the Superior Court sitting without a jury. It is before this court on the plaintiff's appeal from an order entered in the Superior Court.

The pertinent facts follow. The plaintiff and defendant are sister and brother. Their father, Albert F. Wiesner, died on November 12, 1967, leaving a will which named his son as executor. The assets of the estate consisted mainly of shares of stock in various corporations. Under paragraph Fourth of the will plaintiff's father left her one half of all stocks and bonds owned by him at the time of

his decease, subject to the payment of two bequests in the sum of $2,000 each.

The plaintiff claimed that defendant had failed to include in the inventory of the estate all stocks and bonds owned by their father at the time of his death. She charged that certain stock certificates in the possession of defendant and standing in the name of the decedent alone were the property of the decedent during his lifetime and belonged to the estate.

The defendant refused to add the stocks in question to the inventory. He claimed that on November 20, 1961, these stocks, which were then in the possession of the Rhode Island Hospital Trust Bank as security for a loan made to the Wiesner Manufacturing Company, had been given to him by his father, subject to repayment of the bank loan.

To prove the alleged gift defendant presented testimony showing his relationship with his father in the management of the Wiesner Manufacturing Company, which had been started by his father in 1938 or 1939. The defendant started with the company as an employee and over the years was given varying percentages of ownership. In 1967 he owned 100 per cent of the outstanding stock of the company, his father having fully retired. During the 1950's and early 1960's the company was in financial difficulty and it became necessary from time to time to borrow money from the Rhode Island Hospital Trust Bank. As security for these loans, the decedent pledged certain listed stocks. These stocks were deposited with the bank as collateral on December 29, 1952, June 8, 1961 and August 27, 1963. The defendant claimed that as an inducement for him to stay in and continue the business, his father gave him the pledged securities subject to the outstanding loan and reserved to himself the dividend income from the stocks.

In trying to establish a gift of the disputed stocks, defendant relied to a great extent on the minutes of a special meeting of the stockholders of Wiesner Manufacturing Company held on November 20, 1961, while decedent was president of the company. The waiver of notice of said meeting states that a special meeting of the stockholders was called "for the purpose of acting on, and recording a suggestion from" the decedent "and for the transaction of any other business." The waiver is signed by the decedent and defendant as being all of the stockholders of the company.

The minutes disclose that the president said that the first order of business was to record the president's intentions regarding loans and collateral, and that then he read the following prepared statement:

> " 'I have from time to time borrowed money in my name using stock certificates owned by me as collateral and have loaned said money to the company. The company has been unable to reduce these loans which now amount to $30,000. I do hereby give said stock certificates to my son, Albert F. Wiesner, Jr. subject to the repayment of said loan by him or the company. It should also be understood that this is the final loan that I will make. I have reduced my salary this year to help the company so I feel that so long as the loan is in force I shall collect the dividends on this stock. Albert F. Wiesner shall, from this day have full power over these stocks, but I do ask that he do his best to have the company pay this loan and not sell the stock to pay it.
>
> " 'I am aware of my son's loyalty and take this method to repay it. My first thought was to give him additional stock in the company but I feel that he is not ready to assume full responsibility so am making this instead.' "

The minutes further disclose that a resolution was passed making the above statement a part of the permanent records of the company. The defendant signed as secretary

and decedent's name appears under a sentence stating: "I have read the above minutes and agree that this is a true copy of said minutes."

It appears from the transcript that only defendant and his father were present at the meeting; that defendant typed up the minutes sometime after, but not the same day; that he did not see his father sign the waiver or minutes; and that defendant signed and mailed them to his father. It also appears from the transcript that the loan was not repaid in the lifetime of decedent; that defendant did not know what stocks were on deposit on November 20, 1961; and that all he knew was which stocks were returned to him by the bank.

The defendant obtained the disputed securities from the bank on January 31, 1968, on his signature. The receipt signed by him contains the list of the stocks which at the time of the trial were in defendant's possession, but still stood in the name of decedent.

At the trial in the Superior Court plaintiff questioned the genuineness of decedent's signature on the minutes and on the waiver of notice. The plaintiff presented the testimony of a handwriting expert to prove that defendant had not signed the documents in question and defendant presented the testimony of an expert who testified that the signature was genuine.

The company's accountant appeared as a witness and testified, in part, about a conversation with decedent relative to the latter's making a gift of stock to defendant.

The securities involved in this case do not include stock of Wiesner Manufacturing Company — the ownership of that stock is not an issue in this case.

One of the bank's loan officers was called as a witness. He testified that the loan was made to decedent; that he was the customer; that the bank records do not indicate that decedent, at any time, advised the bank that the

securities had been gifted to someone else; that additional securities had been deposited with the bank on August 27, 1963; and that whoever turned the securities over to the son did it because they knew he was acting as agent for his father.

In his decision the trial justice said that the minutes of the November 20, 1961 stockholders' meeting, when considered in the light of all the other credible evidence, were convincing evidence that there was a completed gift made by decedent to defendant of the stocks that had been delivered to the bank as security for the loan. After concluding that the signatures of decedent on the waiver of notice and minutes of the meeting were genuine he found as fact that defendant had proven by clear and convincing evidence that a gift, in praesenti, was made by decedent to his son of the stocks in the bank's possession on November 20, 1961, and that they were the property of defendant; that there was insufficient proof of an intent on decedent's part to make a further gift of the additional stocks subsequently deposited with the bank on August 26, 1963; that those stocks were the property of decedent at the time of his death and defendant should amend the. estate inventory by adding these stocks; and that defendant, in his capacity as executor, was acting in good faith and, therefore, no personal liability was attributed to his failure to include in the inventory the stocks deposited with the bank in August 1963.

On the basis of such findings the trial justice dissolved a restraining order previously issued by the Superior Court and awarded certain fees which are not in issue. He also found that plaintiff's Florida accountant had engaged in the illegal practice of law in advising plaintiff and charged defendant's attorney, as an officer of the court, to conduct further investigation on such matter and to take such action as he deemed requisite. An order incorporating the

findings and order of the trial justice was subsequently entered.

The plaintiff challenges the correctness of the trial justice's decision on several grounds, the first of which is that there was no actual or symbolic delivery of the disputed securities and, therefore, there was no valid gift. We agree.

An essential element of a gift, in addition to a present true donative intent on the part of the donor, is some manifestation such as an actual or symbolic delivery of the subject of the gift so as to completely divest the donor of dominion and control of it. *Chase* v. *Blackstone Distributing Co.*, 110 R. I. 537, 545, 294 A.2d 392, 396 (1972).

As to actual delivery there is no evidence that the stocks were ever delivered by decedent to defendant or that they were delivered to the bank as agent for defendant. The record shows that most of these securities were left with the bank as collateral in 1952 and none were delivered during the period between June 8, 1961 and August 27, 1963. The bank records do not indicate that the decedent had advised the bank that the securities had been given as a gift to defendant or to anyone else.

We come now to plaintiff's claim that defendant also failed to prove a symbolic delivery of the disputed stocks. We shall assume for the purpose of this discussion that the minutes of the November 20, 1961 meeting are authentic and that decedent's signature is genuine. We shall also assume, as plaintiff suggests, that the minutes can be construed to be a deed of gift. There is no evidence in this record that decedent ever delivered these minutes to defendant or to any other person for defendant so as to constitute a symbolic delivery of the disputed shares then in the possession of the bank. Nor is there any evidence as to when the minutes were signed by decedent or when or how they got into the minute book. Nor do the minutes

or the minute book designate what stocks were pledged to the bank on November 20, 1961.

The only evidence as to when the minutes were first seen in the minute book is the company accountant's testimony that he saw them in the minute book in 1967, after decedent told him about the gift in July, 1967. As previously stated, decedent died on November 12, 1967. There is nothing in the record indicating that these minutes were placed in the minute book prior to decedent's death.

We agree with defendant's statement that where there cannot be an actual delivery, there must be such a delivery as the nature and situation of the subject sought to be given reasonably permits, and this delivery must clearly manifest the donor's intention to divest himself of title and possession. It is usually considered sufficient if the donor has put it in the power of the donee to take possession, or if the donee can take possession without committing a trespass. *See* 38 Am. Jur.2d *Gifts* §20 at 821-23 (1968). This raises the question — did the minutes, on this record, divest the decedent of dominion and control of the securities then in the possession of the bank? We believe not. The stocks remained his own on the books of the corporations which issued them and on the books of the bank. He, himself, could have gone to the bank, paid off the loan, and demanded and gotten the securities at any time. In the absence of evidence as to when defendant got possession of the minutes, it cannot be said that he had been given power to take possession of the stock by virtue of a symbolic delivery. Since there was no delivery, either actual or symbolic, we conclude that the trial justice erred in finding that defendant had proven by clear and convincing evidence that a gift, in praesenti, was made by decedent to defendant of the stocks in the possession of the Rhode Island Hospital Trust Bank on November 20, 1961.

In view of this conclusion we need not inquire whether the alleged gift of November 20, 1961, was subject to a condition that was not fulfilled or whether decedent had sufficient mental capacity to make such gift.

As we stated above, the trial justice found that defendant, in his capacity as executor, was acting in good faith and therefore no personal liability was attributed to his failure to include in the probate inventory the stocks which had been left with the bank on August 27, 1963. The plaintiff now argues that the trial justice was clearly wrong in finding that defendant was acting in good faith and, therefore, personal liability should have been imposed upon him. We find no error.

The trial justice inferred from the established facts, namely, defendant's testimony as to why he did not include these securities in the probate inventory, that defendant was acting in good faith. It is true that his finding on the question of good faith is inferential, but this court has said many times that a trial justice's inferential findings will be accepted as valid and binding so long as the inferences he draws, whether affirmative or negative, are reasonable and logical and flow from the established facts. *Chase* v. *Blackstone Distributing Co., supra.* Here the facts with respect to the stocks left with the bank on August 27, 1963 are undisputed. The defendant testified that he did not include the stocks in the estate inventory because he thought they were his. The trial justice believed him and, consequently, inferred that he had acted in good faith. This inference was reasonable and logical. Under our rule the findings of fact made by the trial justice are entitled to great weight and will not be disturbed by us unless they are clearly wrong. We have examined the record to determine the correctness of the trial justice's finding on the question of defendant's good faith. We are unable to say that his inferences

as to defendant's good faith were unreasonable or clearly wrong.

There is no merit to the plaintiff's contention that the trial justice exceeded his jurisdiction in ordering the defendant's attorney to further investigate and take such action as he deemed requisite with respect to the alleged illegal practice of law by the plaintiff's Florida accountant, as disclosed by the testimony presented during the course of the trial of this case in the Superior Court. However, we note that in the posture of this appeal, we are not required to pass upon, and, therefore, do not decide, the question of the illegal practice of law by said accountant.

The plaintiff's appeal is sustained in part and denied in part, the order appealed from is vacated, and the case is remanded to the Superior Court for the entry of a new order in accordance with this opinion.

Mr. Justice Joslin did not participate.

*Worrell and Hodge, Eldridge H. Henning, Jr.,* for plaintiff.

*F. Albert Starr,* for defendant.