DECISION
This matter is before the Court on Plaintiff's complaint seeking injunctive relief. By agreement of the parties and in accordance with RCP 65(a)(2), the trial of the action on the merits was consolidated with the hearing on preliminary injunction. The matter was tried to the Court without a jury. The following constitutes the findings of fact and conclusions of law of the Court consistent with the requirements of RCP 52(a).
David W. Carpenter (hereafter "David" or the "Plaintiff") is the son of Benjamin S. Carpenter, Jr. (hereafter "Benjamin" or the "Defendant"). The allegations of the verified complaint state that in May, 2000, Benjamin gifted a 1958 Harley Davidson motorcycle, Model F.L.H. to his son David. The Defendant denies that he made a gift to the Plaintiff in May, 2000, and denies that the Plaintiff is entitled to the motorcycle. Shortly after the trial concluded, Benjamin died. On February 22, 2006, this Court entered an order substituting the Executor of the Estate of Benjamin S. Carpenter, Jr., Benjamin Carpenter III, as the Defendant. The substitution has no material effect on the outcome of this matter.
I. FINDINGS OF FACT
1. Defendant Benjamin S. Carpenter, Jr. is the father of Plaintiff David W. Carpenter.
2. As of May, 2000, David was employed by his father at Carpenter's Farm in Matunuck and Perryville, Rhode Island. The farm is a family business, and David had worked for his father for many years.
3. On May 15, 2000, Benjamin delivered to David, and David accepted, a one page document, signed by Benjamin, and notarized. The document reads "I, Benjamin S. Carpenter, Jr. give this 1958 Harley Davidson 1200 F.L.H. Color Black Vehicle ID # 58ELH1246 to my son David W. Carpenter as a gift."[1]
4. Benjamin owned several vintage motorcycles. Before delivering the document to David, Benjamin gave David the choice of which motorcycle he wanted, and David chose the 1958 F.L.H., hoping some day to give the vehicle to his son, who at the time was five years old. Benjamin's other son, John, apparently on the same day, was given a gift of a 1987 F.X.L. motorcycle.[2] John observed the notarized document being delivered by his father to David.
5. At the time of the delivery of the document, Benjamin and David discussed the continued storage of the motorcycle in a shed on Benjamin's property. Benjamin testified that it was his wish that the motorcycle remain stored on his property, and that David not sell the bike "as long as I live."
6. After accepting the document in May, 2000, David kept the motorcycle stored in a shed on his father's property. The vehicle was available to David since it was neither locked nor chained, and did not need a key for ignition. There was no testimony that Benjamin used the vehicle while it remained stored in the shed on his property. Although David testified that he neither paid the taxes nor insurance on the motorcycle prior to its registration in his name, there is no testimony as to who, if anyone, paid the taxes or insurance.
7. From May, 2000 until August, 2005, the motorcycle was left in Benjamin's shed, and David did not register the vehicle in his name until August, 2005. At that time, the Rhode Island Division of Motor Vehicles, after accepting a copy of the May 15, 2000 document, registered the vehicle in David's name.
8. Between the time of the delivery of the "gift document" and August, 2005, David and his father had a serious disagreement, at which time Benjamin told David "we [are] done."[3]
From that time, David and Benjamin did not speak to each other, and David's attempts to go to the property where the motorcycle was stored were met by physical threats from Benjamin.
9. David has never taken physical possession of the 1958 F.L.H. Harley Davidson motorcycle.
II. ANALYSIS AND CONCLUSIONS OF LAW
In order to establish a claim for an inter vivos gift, the Plaintiff must prove the elements of the gift by clear and convincing evidence. St. Germain v. DeCarvalho, 96 R.I. 242,190 A.2d 582 (1963). The Plaintiff's complaint alleges that Defendant made an inter vivos gift of the motorcycle. Accordingly, by clear and convincing evidence, the Plaintiff must establish that at the time of the gift, the donor had a present donative intent, together with a manifestation of that intent in the form of an actual or symbolic delivery of the subject of the gift, so as to completely divest himself of dominion and control over it. Black v. Wiesner, 112 R.I. 261, 267, 308 A.2d 511, 515
(1973).
In this case, there is no question that the document delivered to David on May 15, 2000, clearly and unequivocally demonstrated a present donative intent, as the words of the document are clear and unambiguous. The question in this case is whether the evidence supports a finding of symbolic delivery of the motorcycle in such a manner as to manifest the donor's intention to divest himself of dominion and control over the property. As the Court in Black stated: "[I]t is usually considered sufficient if the donor has put it in the power of the donee to take possession, or if the donee can take possession without committing a trespass." Id. at 268, 308 A.2d at 515.
In this case David testified credibly as to the discussions he had with his father concerning the need to store the motorcycle in his father's shed. He testified that he had no acceptable place to store the bike, as his basement was damp and unsuitable. The bike had been stored in his father's shed for some time, and there was no immediate need to take physical possession or move the bike from its then current storage location. The bike was unlocked and did not need an ignition key to start the engine. Although there was no testimony that either the father or son actually rode the motorcycle after May 15, 2000, there is no doubt that David had full access to the bike at any time, and could have, had he chosen, taken the gift document to the Registry of Motor Vehicles at an earlier date to register the vehicle in his name.[4] Until the fallout erupted several years later, there were no impediments to David's unrestricted entry to his father's property to access the motorcycle or for other purposes. Not until five years after making the gift did Benjamin take any action to manifest a suggestion that title remained with him. Accordingly, the symbolic delivery of the motorcycle was completed as of May 15, 2000 by Defendant's delivering the notarized gift document to Plaintiff.
Benjamin makes much of his purported statement that when the gift was made he requested that the bike remain stored in his shed during his lifetime. The Defendant takes the position that this statement rendered the gift testamentary, subject to revocation at any time prior to his death. Benjamin's testimony that he wished David to keep the motorcycle on his property until Defendant died is directly contradicted by David's testimony. Furthermore, Benjamin's testimony to that effect is inherently suspect. If it were Benjamin's true intention, as argued, that the gift of the motorcycle to David was only to take effect upon Benjamin's death, then there could have been no gift at all, since an attempted testamentary gift that is not made in accordance with the statute of wills is invalid. See McCartinv. Devine, 66 R.I. 100, 17 A.2d 864 (1941). It appears to the Court, rather, that several years after having made and completed a proper inter vivos gift of the motorcycle, Benjamin had a change of heart based upon the deterioration of his relationship with his son. Because Benjamin had already manifested his present intention to make a gift in May, 2000, and symbolically delivered the motorcycle to David in a manner evidencing the transfer of both dominion and control, it was simply too late to undo the gift previously made and completed. Compare, Bank of ManhattanTrust Co. v. Gray, 53 R.I. 377, 380, 166 A. 817, 818 (1933) (burden of proving a gift was not met because the testatrix exercised joint control with the respondent, conferring only a use right over the property in issue, not possession.)
Even if this Court were to accept the testimony of Benjamin, which stated that he expressed his desire that David keep the property in the Defendant's shed, nothing in that statement runs contrary to the absolute intent to make a present gift in May, 2000, as evidenced by the words contained in the gift letter, as well as the symbolic delivery of the letter as a substitute for actual delivery of the property.[5] The mere desire expressed by Benjamin, as to the storage location of the vehicle, in no way serves to destroy the unambiguous donative intent as set forth in the notarized document dated May 15, 2000. See,e.g., Cahill v. Tanner, 43 R.I. 403, 113 A. 289 (1921) (when property is given absolutely, words of request or recommendation are not mandatory); Young v. Exum, 94 R.I. 143, 179 A.2d 107
(1962) (precatory words will be construed as words of command only if it is clear that the testator intended to impose a legal obligation upon the legatee).
III. CONCLUSION
In accordance with the above findings of fact and conclusions of law, this court determines that title to the 1958 Harley Davidson motorcycle, Model F.L.H., # 58 FLH1246, is the property of the Plaintiff, and Defendant, his heirs, executors, and assigns, are permanently enjoined from interfering with the Plaintiff's exclusive title and right to possession of said vehicle. Judgment shall enter consistent with this decision.
[1] Defendant admitted in testimony that the document was delivered to David and that it bears his signature. Defendant stated that the identification number set forth on the document should have been "#58FLH1246," rather than "#58ELH1246." Defendant, however, has not raised this apparent clerical error in defense of the claim.
[2] There was no testimony as to whether Benjamin has ever contested the gift to his son John, which was also memorialized by delivery of a similar document.
[3] Family feuds can often result from apparently innocent misunderstandings. The rift between David and his father resulted from David's decision, contrary to the wishes of his father, to take a weekend vacation in Maine.
[4] The parties do not dispute that because of the age of this vehicle, the vehicle was exempt from the requirement of having a certificate of title. See G.L. 1956 § 31-3.1-38.
[5] As Plaintiff properly points out, in the case of motor vehicles, actual delivery to the donee of a certificate of title has been held to constitute symbolic delivery, even in the situation where the donor retains actual possession of the vehicle. See Smith v. Acorn, 32 A.2d 252, 254-55 (D.C. Mun. Ct. App., 1943); Gray v. Gray, 78 Idaho 439, 445-46,304 P.2d 650, 653-54 (1956). In this case, because certificates of title were not operative due to the age of the vehicle, the donor gift letter, which was actually delivered to David by his father, was accepted by the Registry of Motor Vehicles as sufficient to permit registration of the motor vehicle in David's name. See
Gen. Laws 1956, § 31-3.1-9.