**Thomas SILVA**

v.

**Margaret FITZPATRICK.**

No. 2006–125–A.

Supreme Court of Rhode Island.

Jan. 25, 2007.

Donald R. Lembo, Esq., North Providence, for Plaintiff.

Thomas J. Ford, Esq., for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on December 4, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time. We affirm the judgment.

The plaintiff, Thomas Silva (plaintiff or Silva), appeals from a judgment ordering the defendant, Margaret Fitzpatrick (defendant or Fitzpatrick), to pay $33,895.09 as compensation for Silva's interest in real estate, in connection with an action for partition. On June 23, 1998, plaintiff and defendant jointly purchased property at 73 Windward Walk, in North Kingstown, Rhode Island (the property). The parties lived together at the property until Silva moved out in June 2001. Silva argues that he paid part of the mortgage for the first few months after he left; however, from that date forward, there is no dispute that Fitzpatrick paid the mortgage, taxes, insurance and utilities on the property.

Silva filed a "Petition to Partition Real Estate" in May 2002, and defendant filed a counterclaim seeking reimbursement for expenses that plaintiff owed. Eventually, the parties agreed to sell the real estate and attempt to negotiate a settlement of each party's equity in the property. After these efforts failed, a hearing was scheduled in Superior Court. Rather than sell the property, Silva agreed to allow Fitzpatrick to purchase his interest in the property. The parties also agreed that the property had a fair market value of $285,000, with a balance of $110,000 due on the mortgage.

Fitzpatrick contended that from the time Silva left until the time of trial, she paid $80,011.14 in expenses, including mortgage, taxes, insurance, utilities, and repairs. Additionally, Fitzpatrick said that she spent $25,247.70 at the time of the purchase of the property, including closing costs, inspection, initial deposit, and insurance payment.

The trial justice ordered that Silva pay half the initial costs ($12,623.85, plus $9,846.60 in prejudgment interest, calculated from the date of purchase), as well as $30,019.27 in expenses (including mortgage, insurance, taxes, repairs and utilities); the trial justice then subtracted these amounts as setoff against Silva's $85,384.81 share in the net equity of the property and ordered that Fitzpatrick pay Silva $33,895.09.[1]

### Issues

On appeal, Silva argues that the trial justice erred: (1) in awarding Fitzpatrick

---

1. In his findings of fact, the trial justice calculated the amount due to Silva as $32,895.09. However, the final sentence of the order changes this number to $33,895.09 without explanation. Additionally, the final judgment transposes two of the numbers from the order to change the total to $33,859.09. The parties have failed to address these disparities.

$12,623.85 reimbursement on the initial purchase and closing costs; (2) in awarding Fitzpatrick $9,846.60 in prejudgment interest on that amount; and, (3) in awarding Fitzpatrick $30,019.27 in post-purchase expenses, for a total setoff of $52,489.72 against Silva's one-half equity interest in the property.

■ "It is well settled that our standard of review of the findings of fact by a trial justice in a non-jury case is deferential. We shall not disturb such findings unless they are clearly wrong or unless the trial justice has overlooked or misconceived relevant and material evidence." *Barone v. Cotroneo,* 711 A.2d 648, 649 (R.I.1998) (mem.) (citing *Wickes Asset Management, Inc. v. Dupuis,* 679 A.2d 314, 317 (R.I.1996)). Questions of statutory interpretation, however, are reviewed *de novo* by this Court, and we conduct that review mindful of the principle that "[i]n matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Webster v. Perrotta,* 774 A.2d 68, 75 (R.I. 2001) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001); *Matter of Falstaff Brewing Corp. re: Narragansett Brewery Fire,* 637 A.2d 1047, 1050 (R.I.1994)).

■ As his first point of appeal, plaintiff argues that the trial justice erred when he found that plaintiff owed the defendant $12,623.85, a sum which represented half the money defendant paid as a down payment and other closing costs, arguing that the doctrine of transmutation had transformed defendant's initial payments into jointly owned property. To support this contention, plaintiff cites *Quinn v. Quinn,* 512 A.2d 848 (R.I.1986), for the proposition that "[w]hen, during the course of a *marriage,* title to property for which one spouse has paid the purchase price is ac-

quired in the names of both spouses, the transaction is presumed to be a gift or advancement for the benefit of the other spouse." *Id.* at 852 (emphasis added). While novel in its approach, this argument fails because these parties were not married.

■ The plaintiff further argues that, even if the doctrine of transmutation does not apply, the $12,623.85 in down payment and closing costs nonetheless can constitute a gift under the law, which would mean that he should not be charged with reimbursing defendant for this amount.

We have held that the "elements of a valid gift are a 'present true donative intent on the part of the donor' and 'some manifestation such as an actual or symbolic delivery of the subject of the gift * * *.'" *Ruffel v. Ruffel,* 900 A.2d 1178, 1189 (R.I.2006) (quoting *Black v. Wiesner,* 112 R.I. 261, 267, 308 A.2d 511, 515 (1973)). In this case, plaintiff failed to introduce any proof, nor did our review of the record reveal any evidence, that Fitzpatrick, through her words or actions, "exhibited the requisite donative intent" to establish a gift. *Dellagrotta v. Dellagrotta,* 873 A.2d 101, 107 (R.I.2005). Thus, the trial justice properly setoff the $12,623.85 against Mr. Silva's equity interest in the property.

The plaintiff next argues that the trial court erred in awarding prejudgment interest of $9,846.60 to the award of $12,623.85 for the initial purchase and closing costs. The plaintiff bases this argument on his contention that the monetary award itself was improper and, therefore, interest could not have accrued. Because we uphold the award of $12,623.85 for the initial purchase and closing costs, this argument is moot.

■ Alternatively, plaintiff contends that the award should be vacated because the trial justice made no findings of fact

about the date from which interest began to accrue. This argument is not appropriately before the Court. Our review of the record in this case discloses that plaintiff never addressed either the appropriateness of or the calculation date for prejudgment interest to the trial justice. Further, plaintiff filed a posttrial motion to vacate the judgment in this case in which he failed to address the question of prejudgment interest. Finally, the judgment in this case was prepared by plaintiff's counsel and specifically provided for the imposition of prejudgment interest and costs. Accordingly, we decline to address the issue of prejudgment interest in the context of this case.

■ The plaintiff's final point of error is the allegation that the trial justice improperly allocated $30,091.27 as setoff for costs defendant incurred after Silva abandoned the domicile and, presumably, his fiancée. The plaintiff argues that these expenses merely "represent the reasonable value of defendant's and her two children's use and occupancy" of the property,[2] after he vacated the premises. This argument is without merit.

This Court previously has held that, "in order to compel an accounting from one cotenant * * * on the ground that he has had the entire and exclusive occupation [of the property]," the claimant must prove that he or she has been ousted by the cotenant. *Kahnovsky v. Kahnovsky*, 67 R.I. 208, 212, 21 A.2d 569, 571 (1941).[3] Not only was there no evidence that plaintiff was ousted from the premises, but he testified that he willingly abandoned the domicile. Additionally, plaintiff presented no evidence about the fair market rental value of the property, but merely argues that the amount awarded as setoff represented "the reasonable value of defendant's and her two children's use and occupancy." We reject this argument. For these reasons, we affirm the judgment of the trial court concerning the allocation of these expenses.

2. Regrettably, the pertinent Rhode Island statute about "Account between owners of common property," G.L.1956 § 10–2–1, was not cited by either party in their arguments before this Court. Section 10–2–1 states:

"Whenever two (2) or more persons have and hold any estate, interest or property, whether real or personal, in common as joint tenants, tenants in common, co-parceners or joint owners and one or more of the owners of the common property shall take, receive, use or have benefit thereof, in greater proportion than his, her, or their interest therein, such owner or owners, his, her, or their executors and administrators shall be liable to render his, her, or their account of the use and profit of such common property to his, her or their fellow commoner or commoners, jointly or severally; and such of the fellow commoner or commoners or any or either of them, their executors or administrators, shall have his, her, or their action against such receiver or receivers or either of them, as his, her, or their bailiff or bailiffs, for receiving more than his, her, or their part or proportion as provided in this section."

3. Additionally, 59A Am.Jur.2d *Partition* § 153 at 114 (2006) states: "[a] cotenant is not liable for the rental value of the property unless it is shown that he or she wrongfully ousted the other tenant from possession. This rule is often applied in partition actions * * *." *See also* W.W. Allen, Annotation, *Accountability of cotenants for rents and profits or use and occupation*, 51 A.L.R.2d 388, 413 (1957) ("The rule which prevails in the majority of jurisdictions, founded on the plainest principles of property ownership, is that, absent statute construed to work a different result * * *, a tenant in common, joint tenant, or coparcener who has enjoyed occupancy of the common premises or some part thereof is not liable to pay rent to the others therefor, or to account to them respecting the reasonable value of his occupancy, where they have not been ousted or excluded nor their equal rights denied, and no agreement to pay for occupancy, or limiting or assigning rights of occupancy, has been entered into.").

Because the plaintiff's remaining arguments are clearly without merit, we decline to address them.

## Conclusion

For the reasons stated in this opinion, the judgment is affirmed. The papers in this case are remanded to the Superior Court.