DECISION
Before this Court is a matter for decision following a non-jury trial in which Plaintiff, Gaudino Leite ("Plaintiff") brought a complaint against his sister, Defendant, Irene M. Pimental a/k/a Irene M. Leite ("Defendant"). The Plaintiff asks this Court to partition by sale the property owned in joint tenancy with the Defendant, appoint a commissioner to partition the property, allow the Plaintiff to apply certain occupancy costs, and grant such other relief as the Court deems just. The Defendant counterclaims for partition of the property, reimbursement of repairs and expenditures made by the Defendant, attorney's fees, costs, and such other relief as the Court deems just. Jurisdiction is pursuant to G.L. 1956 § 8-2-13.
 I Facts and Travel
The Defendant immigrated to the United States from Portugal in August 1976. When the Defendant arrived, her mother and father, brother, Sidonio Leite ("Sidonio"), and brother, the Plaintiff, were already living in an apartment at 122 Juniper Street in East Providence, Rhode Island, which they rented ("Juniper Street rental"). After the Defendant arrived, she lived in the Juniper Street rental with her family for several weeks. The Defendant then moved into her own apartment at the Juniper Street rental, where she paid $60 per month in rent. *Page 2 
On April 14, 1977, the Plaintiff purchased a property located at 13 Williams Street in East Providence, Rhode Island ("Williams Street property"). The Williams Street property is a residential home with two apartments. The Plaintiff purchased it for $37,000 and took out a $24,500 mortgage over a twenty-year term. The mortgage required a monthly payment of $220. The Plaintiff rented out the two apartments at the Williams Street property while he continued to reside at the Juniper Street rental with his mother, father, and brother.
In 1978, Sidonio married Maria Ferreira Leite ("Maria Ferreira"), who then became the Plaintiff and the Defendant's sister-in-law. In June 1978, Sidonio moved out of the Juniper Street rental, and he and Maria Ferreira moved into the first floor apartment at the Williams Street property. The agreed upon rental price to be paid to the Plaintiff was $120 per month. In addition to the monthly rent, Maria Ferreira also agreed to (1) collect the rent from the second floor tenant; (2) provide a rental receipt; (3) pay the $220 per month mortgage on the Williams Street property to the East Providence Credit Union; and (4) pay taxes and insurance on the property. The Plaintiff agreed to give Maria Ferreira cash for any differential between the rent collected and the mortgage, taxes, and insurance required on a monthly basis.
Maria Ferreira's standard practice was to deposit the rents and additional monies from the Plaintiff into her joint bank account with Sidonio. Maria Ferreira then wrote checks drawn from that account to make the required payments. This arrangement continued until 1985 when Maria Ferreira and Sidonio moved from the Williams Street property to a new home that they built in North Dighton, Massachusetts. After the couple moved, the Plaintiff modified the arrangement with Maria Ferreira. The Plaintiff collected rent from the tenants at the Williams Street property and then brought the rents and any additional monies in cash to Maria Ferreira. Maria Ferreira *Page 3 
continued to deposit these monies into her joint checking account and pay the mortgage, taxes, and insurance on the Williams Street property.
Toward the end of 1986 and during 1987, the Defendant wished to move out of the Juniper Street rental with her two children and her parents. The Defendant stated various reasons for wanting to move, including an insect problem and the fact that the apartment was too small. The Defendant also stated that she did not feel secure there, citing an instance when the FBI arrested several people in an upstairs apartment for drugs. In addition, the Plaintiff testified that the rent at the apartment was being raised after a change of ownership. It was abundantly clear at trial that the Defendant wanted very much to move out of the Juniper Street rental.
After deciding to move, the Defendant looked at apartments, which varied in cost between $600 and $900 dollars per month. After viewing several apartments, the Defendant had a conversation with the nuns at the Lady of Fatima School, where she worked. Based upon this discussion, the Defendant believed that her employer would loan her $20,000 to purchase a house, and she would then be able get a mortgage for the balance of the purchase price. The Defendant went to the East Providence Credit Union and inquired about getting a mortgage.
According to the Defendant, her mother was adamant that the Defendant not borrow money from the Lady of Fatima School and that the money should come from a family member instead. When the mother informed Maria Ferreira of the Defendant's wish to move to a larger and safer residence, Maria Ferreira developed a plan for her brother-in-law and sister-in-law. Maria Ferreira testified that the plan consisted of the Plaintiff purchasing a home for the Defendant and the Defendant's parents. The rent of the new home was to be paid by the Defendant and his parents and that rent was to be combined with the excess rent from the Williams Street property. In this way, she believed that a mortgage on a new property could be *Page 4 
serviced. According to Maria Ferreira's testimony, the Plaintiff was not informed of this plan at the time.
Maria Ferreira contacted a real estate agent who showed two properties to the Defendant and her mother. Maria Ferreira was also present at the showing of the properties. The first property, located on John Street in East Providence, was not adequate for their needs. The second property was located on Russell Street in East Providence ("Russell Street property"). After viewing the Russell Street property, the Defendant wished to purchase it and gave the realtor a check for $100 to hold the property. After the Defendant finally decided on the property, Maria Ferreira presented her plan to Plaintiff for the first time, and the Plaintiff agreed to purchase the property.
On April 2, 1988, the Plaintiff made an offer to purchase the Russell Street property for $145,000, and the offer was accepted by the seller. At that time, the Plaintiff made a deposit on the property in the amount of $7,150, which was given to him by his mother. The form offer to purchase also referred to the $100 deposit previously paid by the Defendant when she viewed the property. The Plaintiff, accompanied by Maria Ferreira, applied for a loan at the East Providence Credit Union to obtain financing and submitted a mortgage application in his name individually.
Several weeks later, a representative of the East Providence Credit Union contacted Maria Ferreira to inform her that the loan the Plaintiff had applied for was not approved by the Credit Union. The Credit Union explained that the Plaintiff's wages and rental income were insufficient to meet credit guidelines. When the Plaintiff was told about this issue, he asked Maria Ferreira if her husband, Sidonio, could be added to the mortgage. Sidonio testified that he declined to add his name because he already had a mortgage on the property in North Dighton, *Page 5 
Massachusetts. Sidonio instead suggested that the name of his sister, the Defendant, be added on the mortgage.
Maria Ferreira approached the Defendant to discuss her name being added to the mortgage and deed to the property, and the Defendant agreed to it. Maria Ferreira did not tell the Defendant about the previous plan to have the Plaintiff individually purchase the property. The Defendant was subsequently listed as a co-borrower on the mortgage application, and the mortgage was approved by the East Providence Credit Union. Maria Ferreira testified that the Plaintiff did not want the Defendant's name on the property, but Maria Ferreira assured the Plaintiff that the Defendant would have no ownership interest and her name could be removed from the documents in the future. No action was ever taken to remove the Defendant's name from the promissory note, mortgage, or deed.
The closing for the Russell Street property took place on May 26, 1988. In attendance at the closing were the Plaintiff, Defendant, Maria Ferreira, the sellers, the realtor, and a representative of the Credit Union. After accounting for the deposits and mortgage proceeds, a balance of $33,947.08 was owed to the sellers. This payment was made by the Plaintiff and his mother. The Defendant did not make any further payment at the closing. The Plaintiff and Defendant were both signatories to the promissory note and the mortgage. The Plaintiff and Defendant took ownership of the property on the deed as joint tenants.[1]
Subsequent to the closing, the Defendant and her two children moved into one of the apartments at the Russell Street property. The Plaintiff, along with his mother and father, moved *Page 6 
into the other apartment at the Russell Street property.[2] The first mortgage payment was made by Maria Ferreira. The Defendant made all subsequent payments of rent, mortgage, property taxes, and insurance at the Russell property through the end of 2002. The Plaintiff listed the full amount of the mortgage and property tax deductions for the property on his personal income taxes from the time of purchasing of the property until the present date.
In 1991, the parties' mother had a stroke and entered a nursing home. The parties' father continued to live at the Russell Street property, and the Defendant received her mother's social security check. The Defendant testified that she used her mother's monthly social security money to help pay the mortgage and expenses for the Russell Street property until her father also moved into a nursing home.
In March 1999, the payments had fallen behind on the mortgage, and the Credit Union threatened to foreclose on the Russell Street property. The Defendant testified that she borrowed $7,444.10 from a friend and brought it to the bank's lawyer to stop the foreclosure. The mortgage payments had fallen behind again in February 2001, and the Russell Street property was scheduled for foreclosure. The Defendant testified that she withdrew $10,265.51 from her retirement account in order to bring the mortgage payments up to date and prevent the foreclosure of the property. During July 2001, the Defendant left her employment due to illness and was awarded temporary disability benefits by the Social Security Administration. In January 2002, the Defendant was awarded permanent disability benefits.
During 2002, the Credit Union again commenced foreclosure proceedings. According to the Plaintiff's testimony, he learned about the pending foreclosure from one of his brothers who *Page 7 
read the foreclosure notice in the newspaper. After learning that the mortgage payments were behind and the property insurance had lapsed on the Russell Street property, the Plaintiff cured the mortgage deficiency, paid the property taxes, and procured a new insurance policy. Shortly thereafter, the Plaintiff filed the instant action.
It is undisputed that the Plaintiff paid all mortgage, property tax, and insurance payments from then until the present date. The Defendant has not made any payments by way of rent or mortgage payments since the end of 2002 and has continued to reside at the Russell Street property. The parties have stipulated that the value of the Russell Street property is $220,000 based upon an appraisal performed by Scotti Associates.
At trial, the parties testified regarding the source of funds used to pay the mortgage, taxes, and insurance for the Russell Street property. The Plaintiff testified that he always gave the Defendant the cash from the Williams Street property rentals to pay the mortgage on the Russell Street property. The Plaintiff also testified that if any additional funds were needed by the Defendant, he would also give that money to her in cash. The Plaintiff has contended that the Defendant was merely a tenant at the Russell Street property whose sole responsibilities were to pay rent for the apartment in which she lived and pay the mortgage, taxes, and insurance using the Plaintiff's money.
The Defendant testified that the Plaintiff did not assist her in paying the mortgage on the Russell Street property until 2003. The Defendant testified that she collected the rent from the other apartment at the Russell Street property and collected money from her mother. The Defendant stated that she would then make up the difference using money from her paycheck and, on many occasions, borrowing money from family and friends in order to make the payments. While the Defendant admitted that she received the rent from the tenants at the *Page 8 
Williams Street property on many occasions, she testified that she put those rental payments in a drawer belonging to the Plaintiff.
After hearing testimony, examining all exhibits, and reviewing the evidence before it and the briefs filed by the parties, this Court renders its decision.
 II Standard of Review
"In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." Super. R. Civ. P. 52(a). In a non-jury trial, the trial justice sits as a trier of fact as well as of law. Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences."Id. "The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." State v. Sparks, 667 A.2d 1250, 1251 (R.I. 1995) (citing Walton v. Baird, 433 A.2d 963, 964 (R.I. 1981)). The factual determinations and credibility assessments of a trial justice are "traditionally accord[ed] a great deal of respect . . . [because it is] the judicial officer who actually observe[s] the human drama that is part and parcel of every trial and who has had the opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." In re Dissolution of Anderson,Zangari Bossian, 888 A.2d 973, 975 (R.I. 2006). *Page 9 
 III Analysis A Ownership of Russell Street Property
Rhode Island case law clearly states that "[t]he shares of joint tenants are presumed to be equal although the contrary may be shown." Lucchetti, 85 R.I. at 111, 127 A.2d at 248. In the absence of clear and convincing evidence to the contrary, each joint tenant is presumed to hold an undivided one-half interest in the whole. Id. Evidence used to rebut this presumption must consist of matters substantially contemporaneous with the purchase so as to be fairly connected with that transaction.Id. at 109, 127 A.2d at 247.
Pursuant to such law, there is a presumption that the Plaintiff and the Defendant each hold equal shares of the Russell Street property. The deed reveals that the Plaintiff and the Defendant held the Russell Street property as joint tenants. In addition, the Plaintiff and the Defendant are listed as co-borrowers on the mortgage and promissory note. This Court must now turn to whether there is sufficient evidence to rebut this presumption.
In order to rebut the presumption of equal ownership, the Plaintiff presented three witnesses to testify with knowledge of matters substantially contemporaneous with the purchase of the Russell Street property. These witnesses were Maria Ferreira, Sidonio, and the Plaintiff.
Maria Ferreira testified with respect to three issues relevant to the ownership interests of the Russell Street property: (1) her formulation of the plan to purchase the Russell Street property; (2) her involvement in viewing the Russell Street property; and (3) her role in obtaining and paying the mortgage of the Russell Street property. This Court finds credible Maria Ferreira's testimony that after speaking with the parties' mother, she formulated the plan *Page 10 
for the Plaintiff to purchase a home for the Defendant and her parents after they moved out of the Juniper Street rental. This Court finds that Maria Ferreira did not communicate this plan to the Defendant at any time before the Defendant viewed the property or when the Defendant gave a deposit for the property. Clearly, Maria Ferreira continued to be heavily involved in the mortgage process. In fact, Maria Ferreira told the Plaintiff that the Defendant would have no ownership interest in the property and her name would be taken off the deed. This Court finds that this information was never communicated to the Defendant. This Court further finds that after purchasing the Russell Street property, the Plaintiff requested on numerous occasions that Maria Ferreira have the Defendant's name removed from the deed. It is clear that Maria Ferreira failed to do so. This Court does not find credible Maria Ferreira's testimony that she did not remove the Defendant's name from the deed because she was too busy. This Court concludes that Maria Ferreira chose not to remove the Defendant's name because she knew that the Defendant was not told she would have no ownership interest in the property when she agreed to have her name placed on the deed and the mortgage. In fact, the Defendant believed and still believes that she was and is an equal owner of the property.
Sidonio also testified as to the purchase of the Russell Street property. Sidonio's relevant testimony was limited to the fact that he was asked by the Plaintiff to become a co-borrower on the Russell Street property after the Plaintiff was turned down for the original loan. The evidence demonstrates that Sidonio declined to be added to the loan. Further, this Court is satisfied that Sidonio had no direct knowledge of the arrangement between the Plaintiff and the Defendant for the Russell Street property.
This Court finds that the Plaintiff believed, based on his conversations with Maria Ferreira, that the Defendant was being placed on the mortgage and deed "in name only" and that *Page 11 
the Defendant had no ownership interest in the property. This Court further finds that at the time of purchasing of the Russell Street property, the Plaintiff believed that the Defendant's name would be removed from the deed at some point in the future because he was told this by Maria Ferreira.
With respect to the sources of payments for the Russell Street property through 2002, the Plaintiff and the Defendant were the only witnesses who had knowledge of these. Their accounts of the sources of payments of the mortgage, property taxes, and insurance were diametrically opposed.
The Plaintiff asks this Court to take him at his word that with the exception of the Defendant's rent payment, the Plaintiff gave the Defendant cash to pay the mortgage, property taxes, and insurance of the Russell Street property. However, the Plaintiff has produced no receipts, bank statements, or other documentary evidence to support this assertion. In addition, this Court has reviewed the Plaintiff's tax returns entered into evidence by the Plaintiff. Those returns clearly show that the Plaintiff did not have sufficient rental income to pay the balance of the mortgage, property taxes, and insurance because the rental income for the Williams Street property was being used to pay direct expenses for that property. Therefore, this Court does not find credible the Plaintiff's testimony that he paid cash for all payments for the Russell Street property until the end of 2002. However, it is undisputed by the parties that the Plaintiff cured the deficiencies in 2002 by paying the outstanding payments owed, property taxes, and procuring a new insurance policy. The Plaintiff has also made all mortgage, property tax, and insurance payments for the Russell Street property from that point until the date of trial.
With respect to the sources of payments for the Russell Street property until 2002, the Defendant presented credible testimony and documentary evidence. This Court adopts the *Page 12 
Defendant's account of how the mortgage payments were made and the source of those funds. The Defendant's testimony was credible regarding the sources of payments for the Russell Street property until 2002. Although she was confused at times because of a language barrier, the Defendant testified with specificity as to the mortgage payments that were missed. The Defendant and her son's retirement withdrawals and bank drafts issued to pay mortgage deficiencies constituted significant documentary evidence to support the Defendant's contention that she made a substantial contribution to the Russell Street property. In addition to making significant payments on the Russell Street property, the Defendant also notably obligated herself when she signed the mortgage. SeeMatracia v. Matracia,119 R.I. 431, 434-35, 378 A.2d 1388, 1390 (R.I. 1977) (finding that parties were joint owners where petitioner wife obligated herself by signing the mortgage of the property and she and husband subsisted on their joint income).
The Plaintiff has failed to support his claim to rebut the presumption that the Plaintiff and the Defendant hold the property equally. Given the Defendant's mortgage obligation and mortgage payments on the Russell Street property, it is clear that the Defendant was not merely a nominal owner. The Plaintiff has not presented clear and convincing evidence to rebut the presumption of equal ownership, and therefore, this Court finds that both the Plaintiff and the Defendant hold an undivided one-half interest in the Russell Street property. See Lucchetti,85 R.I. at 111, 127 A.2d at 248.
 B Partition
Partition is an equitable remedy. "In this state partition is governed by statute." Bianchini v. Bianchini,76 R.I. 30, 33, 68 A.2d at 59, 61 (R.I. 1949) (citing
G.L. 1956 § 34-15-2 and § 34-15-16). Our Supreme Court has explained that "the intent of the statute is to provide in *Page 13 
the first instance for the partition of realty by metes and bounds giving to each owner therein their fair and equitable portion of the same, but in the event of its not being practicable to make such a division, in that event only, the court may in its discretion order a sale of the property and a division of the proceeds."Lannon v. Lannon, 40 R.I. 60, 62, 99 A. 819, 820 (R.I. 1917);see Matracia, 119 R.I. at 437, 1378 A.2d at 1391. Thus, where the physical division of property by metes and bounds is impracticable, this Court has discretion to order partition by sale under G.L. 1956 § 34-15-16. Bianchini,76 R.I. at 34, 68 A.2d at 62; Lannon, 40 R.I. at 62;99 A. at 820. Specifically, § 34-15-16 provides:
 In an action for partition, the superior court may, in its discretion . . . order the whole premises sought to be divided, or any particular lot, portion, or tract thereof or the interest of the plaintiff . . . or of the defendant . . . in the whole premises . . . to be sold, either at public action or private sale. . . .
In partitioning property, this Court is required to consider all facts and circumstances in evidence before granting partition by sale. DeBartolo v. DiBattista,117 R.I. 353, 367 A.2d 701, 703 (R.I. 1976) (citingBianchini, 76 R.I. at 35, 68 A.2d at 62).
This Court finds that partition by sale is the appropriate remedy in the instant case. See Giuletti v. Giuletti,784 A.2d 905, 933-37 (Conn. App. 2001) (discussing the discretion of the trial court to order a partition by sale). The parties do not agree on many issues, but they do agree that partition is the proper remedy if both parties are found to have an interest in the Russell Street property. Given the contentious nature of the relationship between the parties and the fact that the Russell Street property is a residential home, this Court finds that partition by sale is the equitable solution. The evidence presented at trial shows that the parties have not spoken with each other in many years, and they do not trust one other. Further, the Plaintiff and the Defendant refuse to reside together or coordinate payments for the property. Therefore, this *Page 14 
Court finds that partition of the Russell Street property by metes and bounds is impracticable, and the Russell Avenue property should be sold by public or private sale.
Based upon the evidence of the troubled familial relationship between the parties, it is unlikely that the Parties will be able to effectuate the partition and subsequent sale without further intervention by this Court. Accordingly, pursuant to G.L. 1956 § 34-15-24, this Court shall appoint a commissioner to partition by sale the Russell Street property. The parties may confer on a mutually agreeable date for hearing to determine who shall serve as commissioner. In accordance with § 34-15 etseq., the appointed commissioner shall collect the rents, pay the mortgage, property taxes, and insurance for the Russell Street property. Any deficiency after the collection of rents shall be borne equally by the Plaintiff and the Defendant. Before trial, the Russell Street property was appraised at $220,000. The chosen commissioner is authorized to advertise and sell the Russell Street property by private or public sale for no less than the appraised value of $220,000 without further order of this Court. The commissioner shall then divide the net proceeds equally between the parties after the payment of all recorded liens, reasonable costs, and other fees charged to the proceeds of the sale.
 C Past Payments
Finally, the Plaintiff requests credit for sums he provided to purchase the Russell Street Property. In particular, the Plaintiff seeks to recover half of the $7,350.00 deposit plus the $33,947.08 cash payment made at the closing in addition to interest on these amounts.
Although our Supreme Court has held that parties may be entitled to a setoff under certain circumstances, this Court finds that a setoff is not appropriate here. See Silva v.Fitzpatrick, 913 A.2d 1060, 1063-64 (R.I. 2007) (affirming trial justice's award to defendant of *Page 15 
half of the initial purchase costs plus expenses incurred after plaintiff abandoned the property). Although the Defendant's contributions may have been greater at the time of purchase, the Plaintiff's subsequent payments balance out the Defendant's initial payments. The evidence at trial clearly demonstrated that the parties' monetary contributions to the Russell Street Property were virtually equal over the period of ownership. The Defendant made substantial contributions to the rent, mortgage, property tax, and insurance payments at the Russell Street property from the time the parties purchased the property through the end of 2002. The evidence also shows that the Plaintiff benefited from receiving tax deductions by listing on his personal income taxes the full amount of the mortgage and property taxes paid on the Russell Street property from the time of purchase until the present date. Further, there is evidence that both the Plaintiff and the Defendant contributed to maintenance costs for the Russell Street property.
Based on the evidence presented by the parties, precise monetary contributions of the parties over the period of ownership, particularly from 1988 through 2002, cannot be determined. However, because this Court determines that based on the credible evidence before it that both parties made substantial and nearly equal contributions over the time, it declines to award any credits for past payments made by the parties.
 IV Conclusion
For the reasons stated above, this Court finds that the Plaintiff failed to clearly and convincingly rebut the presumption of equal ownership of the Russell Street property. Accordingly, this Court finds that the Plaintiff and the Defendant each hold an equal 50% ownership in the Russell Street property. Because partition by metes and bounds is clearly impracticable, this Court orders the Russell Street property partitioned by sale. Said sale shall be *Page 16 
conducted by a commissioner to be appointed by this Court at a hearing. Thereafter, said sale shall be conducted in accordance with § 34-15 et seq.
Counsel shall submit an appropriate order in accordance with this decision.
[1] After the filing of this action for partition, the deed was changed to tenancy in common. This Court finds that this change has no effect on the presumptions in this case and that the Defendant made this change to ensure that if she died during the pendency of this litigation, the property would not become vested in the Plaintiff by right of survivorship. In addition, as the change to tenancy in common does not identify the extent of the respective interests, there is a presumption that the interests are equal.Lucchetti v. Lucchetti,85 R.I. 105, 111, 127 A.2d 244, 248 (R.I. 1956).
[2] From the purchase of the Russell Street property until August 4, 2001, the Plaintiff resided at the property, first in his parents' apartment and then in a room in the basement. After an argument at a relative's wedding on August 4, 2001, the Defendant moved to his friend's house in Bristol, Rhode Island. The Defendant continued to keep many of his belongings in the basement of the Russell Street property.